In the Matter of Frank
BOSCO, Petitioner,

v.

TWIN PINES COAL COMPANY

and

Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 87–1367.

United States Court of Appeals,
Tenth Circuit.

Dec. 29, 1989.

William E. Kenworthy, Denver, Colo., for petitioner Frank Bosco.

Michael J. Rutledge, Asst. Counsel for Administrative Litigation and Legal Advice, U.S. Dept. of Labor, Washington, D.C. (George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol., and Barbara J. Johnson, Counsel for Appellate Litigation, U.S.

Dept. of Labor, Washington, D.C., with him on the briefs), for respondent Director, Office of Workers' Compensation Programs.

Ronald E. Gilbertson, Kilcullen, Wilson and Kilcullen, Washington, D.C., for respondent Twin Pines Coal Co.

Before McKAY, SEYMOUR, and EBEL, Circuit Judges.

SEYMOUR, Circuit Judge.

Frank Bosco applied for benefits under the Black Lung Benefits Act (the Act), 30 U.S.C. §§ 901 *et seq.* (1982). His claim was denied by an administrative law judge (ALJ) and the denial was affirmed on appeal to the Department of Labor Benefits Review Board (BRB). We have jurisdiction to review the BRB order under section 932(a) of the Act, which incorporates by reference the judicial review provision of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c) (1982). *See* 20 C.F.R. § 802.410 (1988). We reverse.

## I.

The Black Lung Benefits Act provides benefits to a coal miner or to his survivors if the miner has incurred a total disability, caused at least in part by pneumoconiosis,[1] arising out of coal mine employment. *See Mullins Coal Co. v. Director,* 484 U.S. 135, 108 S.Ct. 427, 431, 98 L.Ed.2d 450 (1987). Congress passed the Act, in large part, in response to problems that disabled coal miners encountered when filing claims under state workers' compensation programs due to " 'an inflexible, often impenetrable, proof of causation requirement.' " *Mangus v. Director,* 882 F.2d 1527, 1530 (10th Cir.1989) (quoting *Southard v. Director,* 732 F.2d 66, 71 (6th Cir.1984)). The Act and its implementing regulations contain presumptions intended to ease a claimant's burden by allowing an element of the required proof to be presumed from the existence of other rationally-related facts. *See Mullins,* 108 S.Ct. at 439; *see, e.g.,* 30 U.S.C. § 921(c).

When proof of causation continued to be an impediment to the award of benefits under the Act, Congress liberalized the Act's standards. *See Mullins,* 108 S.Ct. at 436–37 (1987). Subsequently, Congress again acted, "curtailing possible abuses created by some of the presumptions ... in the earlier versions of the Act." *Mangus,* 882 F.2d at 1531 n. 10. The Act has thus been subject to several modifications, *see Mullins,* 108 S.Ct. at 429 & n. 1, each amendment engendering regulations which cross-reference one another, occasionally overlap, and contain subtle but significant differences, *see Pittston Coal Group v. Sebben,* — U.S. —, 109 S.Ct. 414, 417–19, 102 L.Ed.2d 408 (1988) (summarizing legislative history of the Act); *see also Bonessa v. United States Steel Corp.,* 884 F.2d 726, 727–28 (3d Cir.1989). As a result, claimants, the courts, and the agency apparatus charged with administering the Act are confronted with a regulatory quagmire which renders the appropriate disposition of a claim for benefits fraught with peril.

## II.

Bosco filed his application on Nov. 5, 1981. His claim is therefore governed by the permanent regulations promulgated by the Department of Labor, 20 C.F.R. §§ 718.1–.404 (1988), effective on April 1, 1980. *See id.* at § 718.2. Of particular relevance to Bosco's claim is the rebuttable presumption provided by section 718.305, which is limited by its terms to claims filed between April 1, 1980, and December 31,

---

**1.** Pneumoconiosis is statutorily defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b) (1982). The regulations explain that

"[t]his definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment. For purposes of this definition, a disease 'arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment."

20 C.F.R. § 718.201 (1988).

1981.[2] *See* § 718.305(e); *see also* 30 U.S.C. § 921(c)(4). The significance of this presumption becomes apparent upon viewing its function in the statutory and regulatory framework. To be entitled to benefits under the Act, Bosco must prove: (1) that he is totally disabled, (2) due to pneumoconiosis, (3) resulting from his coal mine employment. *See Mitchelson v. Director*, 880 F.2d 265, 267 (10th Cir.1989). Under section 718.305, a miner who was employed in underground coal mines for fifteen years or more, and who is the victim of a totally disabling respiratory or pulmonary impairment, is entitled to a rebuttable presumption that he is totally disabled due to pneumoconiosis. Thus, by showing such an impairment plus fifteen years' work in underground mines, a claimant can establish the requisite causal connection *between the disability and pneumoconiosis*.

A claimant who is entitled to the above presumption also receives the benefit of an additional presumption provided by section 718.302, which states that a miner who has pneumoconiosis and has worked in the mines ten years is entitled to the rebuttable presumption that his pneumoconiosis arose out of such employment. This presumption establishes the necessary link *between pneumoconiosis and employment in the mines*. A miner with the requisite number of years in the mines may thus satisfy the causal connections among all the elements necessary to support a claim for benefits upon a showing that he is totally disabled by a respiratory or pulmonary impairment.

In this case, the ALJ found that Bosco had worked in underground mines for approximately thirty-five years. The ALJ further stated that Bosco was totally disabled. Even though these two findings are sufficient to invoke the presumption of section 718.305, the ALJ apparently did not give Bosco the benefit of that presumption, finding instead that Bosco was not entitled to benefits because he had failed to establish that he had pneumoconiosis or that it arose out of his coal mine employment. In affirming the ALJ's decision, the BRB stated that any error by the ALJ in not considering the section 718.305 presumption was harmless because the ALJ's finding that Bosco failed to establish the existence of pneumoconiosis rebutted the presumption, even if invoked.

■ Administrative review of an ALJ decision is governed by 33 U.S.C. § 921(b)(3).[3] Upon administrative appeal, the BRB is not authorized to make independent findings of fact; the ALJ's "findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law." 20 C.F.R. § 802.301(a) (1988). The first task of a reviewing court "is to ensure that the Board has not committed any legal errors in its decision." *Zimmerman v. Director*, 871 F.2d 564, 565 (6th Cir.1989). Our review of alleged errors of law, and the effect they may have had on the benefits decision, must be made in light of the premise that " '[t]he Act is intended to be remedial in nature, and doubts should be resolved in favor of the disabled miner or his [or her] survivors.' " *Mangus*, 882 F.2d at 1530 (quoting *Stomps v. Director*, 816 F.2d 1533, 1534–35 (11th Cir.1987)).

As discussed below, the ALJ's opinion in this case contains an internal inconsistency which leaves us unable to be certain that his decision was made in accordance with the applicable law. Moreover, we cannot accept the BRB's conclusion that any legal error by the ALJ was harmless in view of his fact findings because the ALJ's opinion raises a substantial possibility that these fact findings were made under an erroneous legal standard.

### III.

Bosco argues that the ALJ, after making the fact findings necessary to invoke the

---

**2.** We note that, unlike the instant case, the claim at issue in *Mangus v. Director*, 882 F.2d 1527 (10th Cir.1989), was filed on July 8, 1982, and was therefore not entitled to the benefit of the section 718.305 presumption.

**3.** These standards, which apply to decisions under the Longshore and Harbor Workers' Compensation Act, are incorporated by reference into the Black Lung Benefits Act. *See* 30 U.S.C. § 932.

section 718.305 presumption, erroneously failed to apply the presumption to his case. Defendant Twin Pines Coal Company[4] in essence adopts the harmless error position of the BRB. The parties also disagree on the evidentiary standard under which the presumption is invoked. We first address the statutory scheme to determine the applicable legal standards.

The regulation granting the presumption provides in pertinent part:

"(a) If a miner was employed for fifteen years or more in one or more underground coal mines ... and *if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis ....* The presumption may be rebutted only by establishing that the miner does not, or did not have pneumoconiosis, or that his or her respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

. . . .

(c) *the determination of the existence of a totally disabling respiratory or pulmonary impairment,* for purposes of applying the presumption described in this section, *shall be made in accordance with § 718.204.*"

20 C.F.R. § 718.305(a), (c) (1988) (emphasis added). Section 718.204 governs the determination whether a miner is totally disabled, and provides:

"(a) *General.* Benefits are provided under the Act for ... miners who are totally disabled due to pneumoconiosis.... The standards of this section shall be applied to determine whether a miner is or was 'totally disabled' for the purpose of the Act.

(b) *Total disability defined.* A miner shall be considered totally disabled ... if

pneumoconiosis as defined in § 718.201 prevents or prevented the miner:

(1) From performing his or her usual coal mine work; and

(2) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.

(c) *Criteria. In the absence of contrary probative evidence,* evidence which meets the standards of either paragraphs (c)(1), (2), (3), (4) or (5) of this section shall establish a miner's total disability:

(1) Pulmonary function tests showing values equal to or less than those listed in Table B1 (Males) or Table B2 (Females) in Appendix B to this part for an individual of the miner's age, sex, and height for the FEV test; if, in addition, such tests also reveal the values specified in either paragraph (c)(1)(i) or (ii) or (iii) of this section:

(i) Values equal to or less than those listed in Table B3 (Males) or Table B4 (Females) in Appendix B of this part, for an individual of the miner's age, sex, and height for the FVC test, or

(ii) Values equal to or less than those listed in Table B5 (Males) or Table B6 (Females) in Appendix B to this part, for an individual of the miner's age, sex, and height for the MVV test, or

(iii) A percentage of 55 or less when the results of the FEV test are divided by the results of the FVC test (FEV/FVC equal to or less than 55%), or

(2) Arterial blood-gas tests show the values listed in Appendix C to this part, or

(3) The miner has pneumoconiosis and has been shown by the medical evidence to be suffering from corpulmonale with right sided congestive heart failure, or

---

**4.** Bosco named as defendants Twin Pines Coal Company and the Director of the Office of Workers' Compensation Program, United States Department of Labor. The ALJ found that Twin Pines was the properly designated responsible coal mine operator under 20 C.F.R. §§ 725.-490–.493 (1988). A responsible coal mine operator is directly liable for the payment of black lung benefits on a claim filed by a miner who worked for it after December 31, 1969. *See Director v. Consolidation Coal Co.,* 884 F.2d 926, 928–29 & n. 2 (6th Cir.1989).

(4) Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, or where pulmonary function tests and/or blood-gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b) of this section...."

20 C.F.R. § 718.204(a)–(c)(4) (1988) (emphasis added).

Bosco presented four pulmonary function tests, *see* 20 C.F.R. § 718.204(c)(1), three blood-gas studies, *see id.* § 718.204(c)(2), and reports from three physicians, *see id.* § 718.204(c)(4). The ALJ found that Bosco was totally disabled under section 718.-204(c)(2) based on the results of the most recent blood gas study. If the ALJ correctly determined that Bosco was totally disabled by a pulmonary or respiratory impairment within the meaning of section 718.204, Bosco was entitled to the presumption that his disability is due to pneumoconiosis. However, the ALJ did not refer to this presumption.

In determining the correctness of the ALJ's decision, we first address the parties' disagreement over what evidence the ALJ should have weighed in determining whether a miner is disabled under section 718.-204. That section states that "[i]n the absence of contrary probative evidence, evidence which meets the standards of either paragraphs (c)(1), (2), (3), (4) or (5) of this section shall establish a miner's total disability." 20 C.F.R. § 718.204(c). Bosco argues that this provision must be construed in the same manner as the analogous presumption contained in the interim regulations applicable to claims filed prior to the effective date of the permanent regulations governing Bosco's claim. *See* 20 C.F.R. § 727.200 (1988). This interim presumption, set out in relevant part below, provides a miner with a rebuttable presumption that he is totally disabled due to pneumoconiosis if he worked at least ten years in the mines and can meet one of the following criteria.

"(a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title);

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease ...;

(3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood ...;

(4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment...."

20 C.F.R. § 727.203(a)(1)–(4) (1988).

■ The Supreme Court addressed the burden of proof a claimant must satisfy to invoke the interim presumption in *Mullins,* 108 S.Ct. 427, and held that a fact finder must consider "like-kind" evidence in determining whether one of the triggering criteria has been met. Under this construction, for example, an ALJ must weigh all evidence relevant to the blood gas studies requirement and determine whether the claimant's evidence satisfies that standard by a preponderance of the evidence. If a miner is presumed disabled by considering like-kind evidence relevant to one of the criterion, the existence of contrary evidence relevant to other criteria is not weighed in invoking the presumption, although it is considered in determining whether the presumption has been rebutted. *See id.* at 431–32.

■ Bosco argues that this same construction applies to section 718.204, that his blood gas studies were sufficient to satisfy section 718.204(c)(2) as explicitly found by

the ALJ, and that the ALJ therefore erred in failing to accord him the presumption provided by section 718.305. Defendants argue that the two regulations differ significantly, and that under section 718.204, all evidence relevant to a miner's total disability must be weighed at the invocation stage. We agree with defendants.

The Act requires that all relevant evidence must be considered in determining the validity of claims for benefits. *See* 30 U.S.C. § 923(b). This mandate is satisfied under the interim regulations at issue in *Mullins* at the rebuttal stage. A miner who meets one of the regulatory standards is presumed disabled due to pneumoconiosis arising from work in the mines. The presumption is rebutted if, upon consideration of all relevant medical evidence, the employer establishes that the miner is not disabled, or that his disability did not arise from his work in the mines, or that he does not have pneumoconiosis. *See* 20 C.F.R. § 727.203(b) (1988).[5]

■ The permanent regulations, to the contrary, do *not provide* a miner with a method of obtaining *a rebuttable presumption that he is disabled. Compare* 20 C.F.R. § 718.305 *with id.* § 727.203. The miner bears the burden of establishing his disability, and if he does so he is entitled to the presumption that he is disabled due to pneumoconiosis, and that the pneumoconiosis arose from mining work. The employer may rebut these presumptions by establishing that the miner does not have pneumoconiosis or that his disability did not arise out of mine employment. *See* 20 C.F.R. § 718.305(a).

The permanent regulation further states that, in establishing total disability, a miner's positive evidence will prevail "[i]n the absence of contrary probative evidence." 20 C.F.R. § 718.204(c). Bosco contends that the contrary probative evidence referred to in section 718.204(c) includes only the like-kind evidence weighed when invoking the interim presumption. When the operation of the permanent regulations is considered as a whole, however, we agree with defendants that under Bosco's construction, contrary evidence relevant to the issue of a miner's total disability might never be considered. Because an employer may rebut only by showing lack of pneumoconiosis or lack of relation to mine employment, evidence that tends to prove that a miner is not disabled is not relevant to the issues on rebuttal. Moreover, if that evidence is different in kind from the evidence offered by the miner to establish total disability, under Bosco's interpretation it would not be weighed in determining whether the miner had established total disability. Resolving a claim for benefits under a procedure that does not ensure consideration of all relevant evidence is expressly prohibited by the Act. Accordingly, we conclude that an ALJ must consider all evidence relevant to the issue of total disability in determining whether a miner has established his entitlement to the presumption provided by section 718.305. *Cf. Hillibush v. United States Dept. of Labor*, 853 F.2d 197, 205–06 & n. 16 (3rd Cir.1988) (ALJ must consider all evidence bearing on disability in considering presumption provided by section 718.305(b)).[6]

---

**5.** "In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis." 20 C.F.R. § 727.203(b) (1988).

**6.** In so deciding, we reject Bosco's argument that our construction eliminates the presumption Congress embodied in the Act, or that we are rendering that presumption virtually meaningless. The presumption at issue is set out in the Act at 30 U.S.C. § 921(c)(4), which provides that "[i]f a miner was employed for fifteen years or more in one or more underground coal mines, ... and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is total-

■ We emphasize, however, that evidence relevant to whether pneumoconiosis is the *cause* of a claimant's total disability is *not relevant* at this qualifying stage under the statutory scheme for claims between April 1, 1980, and December 31, 1981. Only evidence relevant to the *existence* of a totally disabling respiratory or pulmonary impairment is relevant at this stage. Section 718.204, which is headed "Total disability defined; criteria for determining total disability," sets out the criteria by which this determination is made. *See* 20 C.F.R. § 718.204(c), *supra* at 1477–78. The existence of total disability must be ascertained only upon all the evidence, positive and negative, material to those criteria.

This construction is required by the way in which sections 718.204 and 718.305 interact. As discussed above, a miner who establishes total disability under section 718.-204 receives a presumption under section 718.305 that his disability is due to pneumoconiosis. The employer may rebut this presumption "only by establishing that the miner does not, or did not have pneumoconiosis, or that his or her respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." Evidence relevant to the existence of pneumoconiosis or a link to mine employment is thus relevant to these rebuttal issues. Such evidence may not be considered in determining whether a claimant has triggered the presumption by showing total disability. *Cf. Hillibush,* 853 F.2d at 206 n. 16 (distinguishing between evidence relevant to invoking the presumption and evidence relevant to rebutting it).

## IV.

■ Upon reviewing the ALJ's decision in light of our analysis of the applicable regulations, we are unable logically to integrate his finding of disability, his discussion of the evidence, and his failure to address the availability of the presumption. Under the heading "Pneumoconiosis and Total Disability," the ALJ reviewed *all* of the medical evidence without discriminating between evidence relevant to the existence of Bosco's total disability and rebuttal evidence pertaining to the nonexistence of pneumoconiosis. The ALJ began by reviewing the evidence from the various tests performed on Bosco. He disqualified a number of the tests but concluded that Bosco was totally disabled by a pulmonary or respiratory impairment based on one blood gas study. There is no indication that the ALJ weighed "contrary probative evidence" under section 718.204(c) in making this determination. After concluding that Bosco had established a totally disabling impairment, the ALJ then discredited the medical opinions of Drs. Wyatt and Katz for various reasons and credited the opinion of Dr. Repsher that "claimant does not have pneumonconiosis or any intrinsic lung disease...." Rec., vol. I, at 65. It was Dr. Repsher's speculation that Bosco's respiratory muscles may have been affected by myasthenia gravis, a neuromuscular disease, thereby causing underbreathing.[7] Rec., vol. II, at 54–56. The ALJ then concluded "that the medical reports fail to establish that [Bosco] *has pneumoconiosis or* that he is *totally disabled due to* a respiratory or pulmonary condition arising out of his *coal mine employment." Id.* (emphasis added). These two conclusions relate to the second and third requirements for recovery, *see supra* at 1476, which must be assessed in light of the presumption accorded the claimant.

In rejecting Bosco's claim for the stated reasons, the ALJ clearly did not give Bosco the benefit of the presumption, and apparently required instead that Bosco affirmatively establish both the existence of pneumoconiosis and that it arose out of coal

---

ly disabled due to pneumoconiosis...." *See also* 20 C.F.R. § 718.305(a). This presumption has value because it relieves a claimant who establishes total disability of the need to establish the fact of pneumoconiosis. That benefit is not diminished by requiring that the predicate fact of total disability be determined on the basis of all evidence bearing on that issue.

7. Bosco was afflicted with ocular myasthenia gravis, and Dr. Repsher was unable to confirm or rule out whether this disease also affected the chest muscles. Rec., vol. II, at 54–55.

mine work. The ALJ's opinion raises two possibilities that require us to remand for further findings. First, he may have found sufficient evidence of total disability to trigger the presumption but erroneously failed to invoke it; or second, in deciding not to invoke the presumption, he may have erroneously considered evidence relevant not just to total disability but to the existence of pneumoconiosis as well. In this latter connection, Dr. Repsher's view that Bosco's breathing difficulties were not caused by pneumoconiosis but may have been caused by myasthenia gravis clearly constituted rebuttal evidence, not evidence as to the existence of total disability as defined by the Act. The ALJ's failure to consider separately evidence relevant only to total disability renders it impossible for us to affirm.

 The BRB felt that the ALJ's failure to invoke the presumption was harmless in any event.

"Because we affirm the administrative law judge's finding that *claimant failed to establish the existence of pneumoconiosis* pursuant to Section 718.202, we need not address claimant's argument relating to total disability. Any error in not considering the presumption of Section 718.305 is harmless, since the administrative law judge's finding that claimant does not have pneumoconiosis rebuts this presumption, 20 C.F.R. § 718.305(d), even if invoked."

*Id.* at 1475 n. 1 (citation omitted) (emphasis added). We cannot agree. If Bosco is entitled to the presumption that he "is totally disabled due to pneumoconiosis, ... [t]he Secretary may rebut such presumption only by *establishing* that (A) such miner does not ... have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4) (emphasis added); *see also* 20 C.F.R. § 718.305(a), (c). The Act thus shifts the burden to defendants to establish the *lack* of pneumoconiosis and/or a connection with mine work, a shift not recognized by the BRB. It is absurd to

conclude that Bosco's failure to carry the burden of proof on these issues renders harmless the failure to provide him a presumption that would relieve him of that burden.[8]

We remand this case to the ALJ so that he can fully articulate his assessment of the evidence under the proper legal standards. As set out above, in determining whether Bosco is entitled to the section 718.305 presumption, the ALJ must weigh all evidence relevant to Bosco's total disability, but only evidence bearing on that issue. If the presumption is triggered, the ALJ must determine whether defendants' evidence affirmatively establishes the lack of either pneumoconiosis or a link with Bosco's mine employment. These evaluations must be made in light of the admonition that "[t]he Act embodies the principle that doubt is to be resolved in favor of the claimant, and that principle plays an important role in claims determinations both under the interim presumption and otherwise." *Mullins*, 108 S.Ct. at 438 n. 29 (quoting the Secretary of Labor, 43 Fed. Reg. 36826 (1978)). Under this principle, "the employer will win, on invocation or rebuttal, only when its evidence is *stronger* than the claimant's." *Id.* at 432 n. 12.

Reversed and remanded for further proceedings in light of this opinion.

---

**8.** Section 718.202(a)(3) recognizes that when the section 718.305 presumption is applicable, the claimant need *not* prove the existence of pneumoconiosis.